IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MARYLAND

In re:

**Rachel Lagos**

Case No. 17-11330
Chapter 11

Debtor.

**PROPOSED INDIVIDUAL CHAPTER 11 COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT OF DR. RACHEL LAGOS**

Respectfully submitted,

/s/ Morgan W. Fisher
Morgan W. Fisher #28711

Law Offices of Morgan Fisher LLC
1125 West St.
Annapolis, MD 21401
410-626-6111
mwf@morganfisherlaw.com

February 15, 2018.

## INTRODUCTION

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the "Plan").  The Plan describes how each creditor's claim will be treated if the Plan is confirmed.

Section 1 contains the treatment of administrative claims.  Section 2 contains the treatment of priority claims.  Section 3 contains the treatment of creditors with secured claims.  Section 4 contains the treatment of general unsecured creditors. The Debtor estimates a 15% distribution to general unsecured creditors.

The creditors are divided into classes (as shown in the table below.)  Secured creditors are in Class 1 (A-F) and discussed in Section 3. Each secured creditor has its own subclass. Unsecured creditors are in Class 2 (A-C) and discussed in Section 4.

| Class | Name of Creditor | Vote Y/N |
|-------|------------------|----------|
| 1-A | BB&T Bank | No. Unimpaired. Deemed to Accept |
| 1-B | Tower FCU | No. Unimpaired. Deemed to Accept |
| 1-C | BMW Financial | No. Unimpaired. Deemed to Accept |
| 1-D | BMW Financial | Yes. |
| 1-E | Clear Mountain Bank | Yes. |
| 1-F | Capital One | Yes. |
| 2-A | Small Claims | Yes. |
| 2-B | All other unsecured creditors not in Class 2(a) or 2(c) | Yes. |
| 2-C | Student Loan Creditors | No. Unimpaired. Deemed to Accept |

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [_____.] The Bankruptcy Court will hold a hearing on confirmation

of the Plan on [_____] at [_____].  If there is any modification to the Plan, the Bankruptcy Court will determine whether it is a material modification and whether a further hearing, re-voting, or change of any deadline is required.

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation.

- Exhibit 1 includes background information regarding Debtor, the events that led to the filing of the bankruptcy petition, a description of significant events that have occurred during this bankruptcy and a summary of this Chapter 11 Plan.
- Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.
- Exhibit 3 contains a summary of Debtor's post-petition Operating Reports.
- Exhibit 4 shows Debtor's projected post-confirmation monthly income and expenses.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.

**YOU ARE STRONGLY ENCOURAGED TO READ THE PLAN CAREFULLY AND TO CONSULT AN ATTORNEY TO HELP YOU DETERMINE HOW TO VOTE AND WHETHER TO OBJECT TO CONFIRMATION OF THE PLAN.**

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. The Plan payments shall begin on the Effective Date as defined in Section 8(a). Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.  If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments.  Enforcement of the Plan, discharge of the Debtor, and creditors' remedies, if Debtor defaults, are described in detail in Sections 6 and 7 of the Plan.

## SECTION 1:  TREATMENT OF ADMINISTRATIVE CLAIMS

1(a)    <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date or by agreement of the professional, or upon approval by the Bankruptcy Court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Law Offices of Morgan Fisher LLC | $15,000.00 |

The following professionals have agreed to accept payment over time as follows. Payments will be made QUARTERLY due on the 30th day of the Quarter, June 2018 or upon approval by the Bankruptcy Court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| Morgan W. Fisher | $15,000.00 | $1,875.00 | 8 |
| Disbursing Agent[1] | $9,000.00 | $450 | 24 |

**Estate professionals are <u>not</u> entitled to vote on confirmation of the Plan.**

1(b)    <u>Post-Confirmation Compensation of Professional Persons</u>.

Compensation for services rendered and for reimbursement of expenses by a professional person after the Effective Date need not be approved by the Bankruptcy Court. Professional persons may invoice the reorganized Debtor (or other responsible third-party) directly, and the reorganized Debtor (or other responsible third-party) may pay such invoices without further order from the Bankruptcy Court.

1(c)    <u>Other Administrative Claims</u>.

Debtor will pay other allowed claims entitled to priority under 11 U.S.C. § 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which must be paid when normally due and payable (these creditors are not listed

---

[1]    The Debtor is actively seeking a bonded party to act as disbursing agent and will seek approval by motion.

below).  Creditors holding administrative claims not listed in the table below must file an administrative claim within 30 days of notice of the Effective Date.

**Administrative claimants are <u>not</u> entitled to vote on confirmation of the Plan.**

1(d)    <u>United States Trustee Fees</u>.

All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

## SECTION 2:  TREATMENT OF PRIORITY CLAIMS

2(a)    <u>Tax Claims</u>.

The Debtor will pay claims entitled to priority under § 507(a)(8) in full over time at the non-bankruptcy statutory interest rate in equal amortized payments in accordance with § 511. Payments will be made quarterly, due on the first day of the quarter, starting on the first such date after the Effective Date and ending on the last such date that is no more than 5 years after the entry of the order for relief.  Payment of priority tax claims in full within 5 years of the petition date and on terms not less favorable than those accorded the most favored non-priority creditor is required by § 1129(a)(9)(C).

**Priority tax claimants are <u>not</u> entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | $20,000.00 | 4% | $1,104.99 | 20 |
| Comptroller of Maryland | $5,500.00 | 4% | $303.87 | 20 |

## SECTION 3:  TREATMENT OF SECURED CLAIMS

3(c)    <u>Creditors' Rights Remain Unchanged</u>.

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|----------------------------|
| 2(a) | BB&T Bank (1st Mortgage) | Residence: 3650 Patuxent River Rd. Davidsonville, MD 21035 |
| 2(b) | Tower Federal Credit Union (2nd Mortgage) | Residence: 3650 Patuxent River Rd. Davidsonville, MD 21035 |
| 2(c) | BMW Financial Services (Perfected Lien) | 2015 BMW x3 |

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will constitute an order for relief from stay. (The account will remain escrowed for property taxes and insurance as may be required by the creditor.) Creditors in these classes shall retain their interest in the collateral until paid in full. **These secured claims are not impaired and are <u>not</u> entitled to vote on confirmation of the Plan.**

3(g)    <u>Property to Be Surrendered</u>.

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|----------------------------|
| 2(e) | Clear Mountain Bank | Vacant Lot: 277 Hawks Chase Lane, Daniels West Virginia 25832 |
| 2(f) | Capital One | 2016 Kawasaki Jet Ski STX-15f |

Debtor will surrender the above collateral on the Effective Date of the Plan.  The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan. Any secured claim is satisfied in full through surrender of the collateral.  Any deficiency claim is a general unsecured claim treated in Section 4.  Creditors in these classes shall retain their interest in the collateral. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

3(i)    <u>Deadline for § 1111(b) Election</u>.

Creditors with an allowed secured claim must make an election under 11 U.S.C. § 1111(b) no later than 14 days after service of the notice of final hearing on the proposed Plan and disclosure statement.

### SECTION 4:  TREATMENT OF GENERAL UNSECURED CLAIMS

4(a)    <u>Class 2A.  Small Claims</u>.

This class includes any creditor whose allowed claim is $5,000.00 or less, and any creditor in Class 2B whose allowed claim is larger than $5,000.00 but agrees to reduce its claim.  Each creditor will receive thirty-six months from the Effective Date of the Plan a single payment equal to: 10% of its allowed claim.

**Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full on the Effective Date of the Plan.**

4(b)    <u>Class 2B. (Other) General Unsecured Claims</u>.

This class includes all known non-priority unsecured creditors whether scheduled or based on proofs of claim on file excluding those in Class 2A.  Allowed claims of general unsecured creditors will be paid as follows:

**Pot Plan. Creditors will receive a pro-rata share of a fund totaling approximately $35,000.00, created by Debtor's payment of $1,500.00 per month for 60 months. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class. Debtor estimates that creditors will receive approximately 10% to 15% of their claims in this class depending on deficiency claims. This class is impaired and is entitled to vote on confirmation of the Plan.**

Pursuant to *Forest Capital, LLC v. Fischer Porter & Thomas, P.C. (In re Forest Capital, LLC)*, 579 B.R. 56 (Bankr. D. Md. 2017), the Debtor states that the following claims are dischargeable and should not be classified as student loan debts under 11 U.S.C. 523(a)(8):

| Sch. E/F  # | Creditor | Amount |
| --- | --- | --- |
| 4.2 | AES/Bank One | $15,736.00 |
| 4.4 | AES/PNC Bank | $13,295.00 |
| 4.21 | Firstmark Services | $20,879.0090 |
| 4.25 | Navient | $15,661.00 |

| 4.26 | Navient | $13,655.00 |
| 4.28 | PNC Bank | $28,000.00 |
| 4.29 | SST | $25,010.00 |
| 4.34 | Wells Fargo | $10,392.00 |

The Debtor anticipates filing declaratory actions to determine these creditors rights, if any, under 11 U.S.C. § 523(a)(8).

4(c)     Class 3C. Student Loan Claims.

This class includes all known unsecured creditors classified as student loan creditors pursuant to 11 U.S.C. § 523(a)(8) as indicated on the Debtor's amended schedules filed on February 15, 2018. These creditors' legal, equitable, and contractual rights remain unchanged. **These unsecured student loan claims are not impaired and are <u>not</u> entitled to vote on confirmation of the Plan.**

## SECTION 5:  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5(a)     Executory Contracts/Unexpired Leases Assumed.

Debtor assumes the following executory contracts and/or unexpired leases upon the Effective Date of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears to be cured will be paid [*SELECT ONE*: (in full on the Effective Date) (in [*NUMBER*] equal [*MONTHLY/QUARTERLY*] installments beginning on the first day of [*MONTH & YEAR*)].

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Cure Installment Amount | Number of Installments |
|---|---|---|---|---|
| | | | | |
| | | | | |

5(b)     Executory Contracts/Unexpired Leases Rejected.

Debtor rejects all executory contracts and/or unexpired leases not previously assumed or listed in Section 5(a), above, as of the Effective Date of this Plan and surrenders any interest in the

affected property and allows the affected creditor to obtain possession and dispose of its property, without further order of the Bankruptcy Court. Claims arising from rejection of executory contracts or unexpired leases are classified under 1-D. Each entity that is a party to an executory contract or unexpired lease rejected pursuant to this Plan shall be entitled to file a proof of claim for damages alleged to arise from such rejection not later than 30 days after the Effective Date. Creditors in Class 1-D are impaired and entitled to vote.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Cure Installment Amount | Number of Installments |
|---|---|---|---|---|
| BMW Financial | BMW X 5 | Surrender | Surrender | Surrender |

## SECTION 6:  DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

6(a)    <u>Discharge</u>.

Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the Bankruptcy Court grants a hardship discharge.

6(b)    <u>Vesting of Property</u>.

On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Section 7(e) below.

6(c)    <u>Plan Creates New Obligations</u>.

Except as provided in Sections 6(d) and 7(d), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

6(d)    <u>Claims Not Affected by Plan</u>.

Upon confirmation of the Plan, and subject to Section 6(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding Sections 7(a), 7(b), 7(c), and 7(d) below, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under 11 U.S.C. §§ 1124(2)(A) and (D).

## SECTION 7:  REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

7(a)    <u>Creditor Action Restrained</u>.

The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Section 6(d) above.

7(b)    <u>Obligations to Each Class Separate</u>.

Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Section 7, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

7(c)    <u>Material Default Defined</u>.

If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 14 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default, party-in-interest, or United States Trustee may file and serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default and request for entry of an order declaring default. If Debtor fails within 14 days after the date of service of the notice of default either: (i) to cure the default; (ii) to file and serve a motion for an extension of time to cure the default; or (iii) to file and serve a motion for a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of

the affected class. If Debtor is in Material Default under the Plan, the complaining creditor may then submit its order declaring Material Default. The provisions of this paragraph do not preclude the United States Trustee from otherwise seeking an order to dismiss or convert the case for cause.

7(d)    <u>Remedies Upon Material Default</u>.

Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the Bankruptcy Court and may pursue its lawful remedies to enforce and collect Debtor's obligations under the Plan.

7(e)    <u>Effect of Conversion to Chapter 7</u>.

If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in 11 U.S.C. § 348(f) upon the conversion of a case from Chapter 13 to Chapter 7.

7(f)    <u>Retention of Jurisdiction</u>.

The Bankruptcy Court retains jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended or modified; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court (see Section 8(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Proc. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## SECTION 8:  GENERAL PROVISIONS

8(a)    <u>Effective Date of Plan</u>.

The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date

on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8(b)    <u>Disputed Claim Reserve</u>.

Debtor disputes the following claims:

| Class | Name of Creditor | Amount According to Creditor | Amount According to Debtor |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

Debtor must create a reserve for disputed claims in the amount of the claim unless the claim is estimated for distribution in a different amount under 11 U.S.C. § 502(c).  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. Debtor must file objections to disputed claims no later than 180 days after entry of the confirmation order.  If a disputed claim becomes an allowed claim, Debtor must immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.

8(c)    <u>Cramdown</u>.

Pursuant to 11 U.S.C. § 1129(b), Debtor reserves the right to seek confirmation of the Plan despite its rejection by one or more classes of creditors.  Debtor's ability to "cramdown" this Plan over the objections of creditors is limited, however, by the "Absolute Priority Rule."  The Absolute Priority Rule provides, in essence, that junior claimants, including Debtor, are barred from taking anything under the Plan unless senior claimants are paid in full.  Debtor provides new value to support the Plan, or creditors accept the Plan.  In the present case, Debtor does retain non-exempt property and proposes to pay less than 100% of claims.

8(d)    <u>Severability</u>.

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8(e)    <u>Governing Law</u>.

Except to the extent a federal rule of decision or procedure applies, the laws of the State of Maryland govern the Plan.

8(f)    <u>Lawsuits and Other Claims for Relief</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

***None.***

Without limiting the foregoing, Debtor retains all causes of action that they have against any party, whether arising pre- or post-petition, and all such causes of action vests in the reorganized Debtor on the Effective Date. The nondisclosure of unknown causes of action is not a settlement, compromise, waiver or release of such cause of action, and does not judicially estop the Debtor from asserting any such cause of action as a claim or defense. Confirmation of the Plan does not constitute a settlement, compromise, waiver, or release of any cause of action unless the Plan or Confirmation Order specifically and unambiguously so provide.

8(g)    <u>Notices</u>.

Any notice to the Debtor must be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

> Rachel Lagos
> 3650 Patuxent River Rd.
> Davidsonville, MD 21035
>
> Morgan W. Fisher, Esq.
> The Law Offices of Morgan Fisher LLC
> 1125 West Street, Suite 227
> Annapolis, MD 21401

8(h)    <u>Post-Confirmation United States Trustee Fees</u>.

Following confirmation, Debtor must continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor must file with the Bankruptcy Court quarterly reports in the form specified by the United States Trustee for that purpose.

Respectfully submitted,

Dated: February 15, 2018.

*/s/ Rachel Lagos*

Debtor: Rachel Lagos

*/s/ Morgan W. Fisher*

Attorney for Debtor(s) #28711

**Exhibit 1 - Events that Led to Bankruptcy, Significant Events that Have Occurred During the Bankruptcy, and Summary of Plan.**

### I. Introduction

The purpose of the Plan is to afford Dr. Lagos financial relief while she rebuilds her professional career. Under the Plan, Dr. Lagos will keep her home and stay current on both of her mortgages on that property. Dr. Lagos will also keep her car and stay current on that loan. Dr. Lagos will surrender real property in West Virginia that is unnecessary to a reorganization and reject a lease on a luxury vehicle. Dr. Lagos will pay the priority tax claims of the IRS and Comptroller of Maryland in full over the life of the Plan. Dr. Lagos has classified certain "educational" loans as dischargeable—loans that were related to her residency and would not qualify as student loans pursuant to 11 U.S.C. § 523(a)(8). Non-dischargeable student loans will be paid outside the plan and will not be materially affected by the Plan. Finally, Dr. Lagos will pay all other unsecured creditors approximately 10% over the next five years.

### II. Events Leading to Chapter 11 Filing

Dr. Lagos is a Harvard educated radiologist and single mother of two college aged sons. In 2016, Dr. Lagos moved from West Virginia to Maryland. A medical office lured Dr. Lagos to Maryland and promised a similar salary ($300,000/year) to her fulltime job at a hospital in West Virginia. The Maryland job was particularly enticing because it allowed her to be close to one of her sons at the Naval Academy. Unfortunately, the job simply did not pay as expected and Dr. Lagos saw her salary reduced by nearly 50%. Simply stated, Dr. Lagos cannot meet her monthly debt servicing obligations and reorganization is the only option.

### III. Significant Events During the Bankruptcy Case

Voluntary Petition: January 31, 2017.

Conversion from Chapter 7 to Chapter 11: March 15, 2017.

**Exhibit 2 – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.**

Real Property #1: 3650 Patuxent Rd., Davidsonville MD 21035

| Fair Market Value | Liens | Cost of Sale | Resulting Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $741,000.00 | 1st $513,087.00 | $74,000.00 | 0.00 | 0.00 | 0.00 |
| | 2nd  $204,500.00 | | | | |

Real Property #2:  277 Hawks Chase Lane, Daniels WV 25832

| Fair Market Value | Liens | Cost of Sale | Resulting Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $35,000.00 | 1st  $99,044.00 | $3,500.00 | 0.00 | 0.00 | 0.00 |
| | 2nd | | | | |
| | 3rd | | | | |

**Exhibit 2** (continued) – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $16,090.00 | | $350.00 | $15,740.00 |
| Automobile #1 | $18,500 | $23,322.00 | 0.00 | 0.00 |
| Automobile #2 | | | | |
| Household Furnishings | $1,250.00 | | $1,250.00 | 0.00 |
| Jewelry | $150.00 | | $150.00 | 0.00 |
| Equipment | | | | |
| Stocks / Investments | | | | |
| Other Personal Property | $600.00 | | $600.00 | $15,740.00 |
| TOTAL | | | | $15,740.00 |

Summary:

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $15,740.00 |
| Recovery from Preferences / Fraudulent Conveyances                [ADD] | 0.00 |
| Chapter 7 Trustee Fees                [SUBTRACT] | $1,574.00 |
| Chapter 7 Trustee's Professionals                [SUBTRACT] | |
| Other Chapter 7 Liabilities                [SUBTRACT] | |
| Unpaid Chapter 11 Liabilities                [SUBTRACT] | $7,500.00 |
| Priority Claims                [SUBTRACT] | $25,500.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | 0.00 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $357,000.00 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 15%[2] |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0.00% |

---

[2]    The distribution backs out payments made to student loan creditors paid outside the plan.

**Exhibit 3 – Summary of Monthly Operating Reports ("MOR").**

| Month | MOR ECF# | Receipts | Distributions | Net |
|---|---|---|---|---|
| 1 | 44 | $13,363.36 | $8,481.08 | $4,882.28. |
| 2 | 67 | $13,364.03 | $16,901.59 | $-3,537.56 |
| 3 | 49 | $10,515.80 | $16,099.49 | $-5,583.69 |
| 4 | 56 | $9,553.10 | $10,409.36 | $-856.26 |
| 5 | 57 | $9,553.10 | $12,878.08 | $-3,324.98 |
| 6 | 60 | $10,311.58 | $10,639.73 | $-328.15 |
| 7 | 68 | $15,741.75 | $11,092.78 | $4,648.97 |
| 8 | 61 | $10,425.96 | $15,624.85 | $-5,198.89 |
| 9 | 69 | $10,425.96 | $9,503.75 | $921.71 |
| 10 | 70 | $5,212.98 | $7,499.89 | $-2,286.91 |
| 11 | | | | |
| 12 | | | | |
| | | _____ | _____ | _____ |
| Average: | | $108,462.12 | $119,135.60 | $-10,673.48 |

**Exhibit 4 – Projected Post-Confirmation Monthly Income & Expenses.**

| Income | Debtor | Spouse |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions | $14,000.00 | 0.00 |
| 2. Estimated monthly overtime | 0.00 | 0.00 |
| 3. SUBTOTAL | $14,000.00 | 0.00 |
| 4a. Payroll taxes and social security | $3,500.00 | 0.00 |
| 4b. Insurance | 0.00 | 0.00 |
| 4c. Union dues | 0.00 | 0.00 |
| 4d. Other (Specify): | 0.00 | 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $3,500.00 | 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $10,500.00 | 0.00 |
| 7. Regular income from operation of business or profession | 0.00 | 0.00 |
| 8. Income from real property | 0.00 | 0.00 |
| 9. Interest and dividends | 0.00 | 0.00 |
| 10. Alimony, maintenance or support payments | 0.00 | 0.00 |
| 11. Social security or government assistance (Specify): | 0.00 | 0.00 |
| 12. Pension or retirement income | 0.00 | 0.00 |
| 13. Other monthly income (Specify): | 0.00 | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | 0.00 | 0.00 |
| 15. TOTAL MONTHLY INCOME (Add line 6 and line 14) | $10,500.00 | 0.00 |
| A. TOTAL COMBINED MONTHLY INCOME | $10,500.00 | |

**Exhibit 4 ( continued) – Projected Post-Confirmation Monthly Income & Expenses.**

| Expenses | Amount |
|---|---|
| 1. Rent or home mortgage (include lot rented for mobile home) | $5,100.00 |
| 1a. Are real estate taxes included?  Yes [ x ]  No [ ] | |
| 1b. Is property insurance included?  Yes [ x ]  No [ ] | |
| 2a. Utilities: Electricity and heating fuel | $215.00 |
| 2b. Utilities: Water and sewer | $75.00 |
| 2c. Utilities: Telephone | $115.00 |
| 2d. Utilities: Other | 0.00 |
| 3. Home maintenance (repairs and upkeep) | $60.00 |
| 4. Food | $425.00 |
| 5. Clothing | $225.00 |
| 6. Laundry and dry cleaning | $120.00 |
| 7. Medical and dental expenses | $125.00 |
| 8. Transportation | $215.00 |
| 9. Recreation, clubs, entertainment, newspapers, magazine, etc. | $120.00 |
| 10. Charitable contributions | 0.00 |
| 11a. Insurance: Homeowner's or renter's | 0.00 |
| 11b. Insurance: Life | $1,225.00 |
| 11c. Insurance: Health | $667.00 |
| 11d. Insurance: Auto | $183.00 |
| 11e. Insurance: Other | 0.00 |
| 12. Taxes: (not deducted from wages or included in home mortgage) | 0.00 |
| 13a. Installment payments: Auto (Do not list payments included in Plan) | $798.00 |
| 13b. Installment payments: Other (Do not list payments included in Plan) | 0.00 |
| 14. Alimony, maintenance, and support paid to others | 0.00 |
| 15. Payments for support of dependents not living at your home | 0.00 |
| 16. Regular expenses from operation of business or profession | $225.00 |

| 17. Other (Student Loan Payments ) | $270.00 |
|---|---|
| B. TOTAL MONTHLY EXPENSES | $10,163.00 |

| C. Disposable Income (Line A - Line B) | $337.00 |
|---|---|

**Exhibit 4 ( continued) – Projected Post-Confirmation Monthly Income & Expenses.**

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | $400 |
| Priority Claims with 4% interest. | $469 |
| General Unsecured Creditors | $631 |
| [OTHER PLAN PAYMENTS - DESCRIBE] | |
| D. Total Plan Payments | $1,500.00 |

| E. Plan Feasibility (Line C - Line D)<br>(Not feasible if less than zero)[3] | -$1,167.00 |
|---|---|

---

[3]      The Debtor is actively seeking a hire paying job as well as reducing her monthly overhead. She will amend this projection as the data changes.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on February 15, 2018, a copy of the forgoing was served to

the United States Trustee and all other parties requesting electronic notice as indicated below:

Creditor's Receiving Notice via CM/ECF:
Alan D. Eisler    aeisler@e-hlegal.com, mcghamilton@gmail.com
Michael J. Klima    bankruptcy@peroutkalaw.com
Katherine A. (UST) Levin    Katherine.A.Levin@usdoj.gov, brenda.b.wilmore@usdoj.gov
Scott Elliot Nadel    scottnadel@lojnlaw.com, jeff@lojnlaw.com
US Trustee - Baltimore    USTPRegion04.BA.ECF@USDOJ.GOV


Respectfully submitted.

 */s/ Morgan W. Fisher*
 Morgan W. Fisher #28711

Law Offices of Morgan Fisher LLC
1125 West St., Suite #227
Annapolis, MD 21401
410-626-6111
mwf@morganfisherlaw.com